<hr/>

## McNEILL v. FRADUS.

(Supreme Court, Appellate Term, First Department. February 1, 1916.)

ATTORNEY AND CLIENT ⬡⇒81—COMPENSATION—CONTRACTS.

Defendant desired to purchase steel belonging to a corporation in the hands of a receiver. A bid for the steel had already been made, and defendant engaged plaintiff to object to confirmation of the bid and to make a higher offer. The original sale being confirmed, the attorney, without

other authority, entered into negotiations with the purchaser for the acquisition of such steel. Immediately on being notified, defendant objected, and refused to carry out the agreement. *Held*, that the attorney, in making such negotiations, was a mere volunteer, entitled to no compensation; his acts not having been ratified.

[Ed. Note.—For other cases, see Attorney and Client, Cent. Dig. §§ 141, 142, 144–146; Dec. Dig. ☞81.]

Bijur, J., dissenting.

Appeal from Municipal Court, Borough of the Bronx, Second District.

Action by Robert H. McNeill against Jacob Fradus. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

Argued November term, 1915, before LEHMAN, BIJUR, and FINCH, JJ.

Edward A. Isaacs, of New York City, for appellant.

Cloke, Koch & Reidy, of New York City (Edward R. Koch, of New York City, of counsel), for respondent.

LEHMAN, J. The plaintiff has recovered a judgment for $408.75, which he claims was the agreed price of services rendered and disbursements made at the defendant's request.

The plaintiff is an attorney residing in Washington, D. C. The defendant was in May, 1914, in the scrap iron business, and was interested in the possible purchase of certain steel belonging to the Arlington Hotel Company, of Washington, which was then in the hands of receivers. The plaintiff represented one of the creditors of the corporation in the receivership proceedings. In May, 1914, the defendant came to the plaintiff's office, and they had certain conversations which the plaintiff claims constitute a contract of employment to obtain this steel for the defendant at the price of $11.25 per ton.

There is some conflict of testimony in the case in regard to material details of these conversations, but the trial justice has resolved this conflict in favor of the plaintiff, and I see no reason to believe that he erred in this respect. For the purpose of this appeal we should therefore accept as true the plaintiff's testimony, and the only question to be considered is whether this testimony is sufficient to make out the cause of action alleged.

The plaintiff testified that the defendant was introduced to him by another Washington attorney, who said:

"He has come over to learn something about certain steel which has been bought for the construction work by the Arlington Hotel Company."

The plaintiff told him that he was connected with the matter, in that he represented a large creditor. They then asked if the plaintiff thought the steel could be bought. He told them that he did not know; that a firm known as Joseph Bros., or Joseph & Joseph, had made a bid for the steel, and that the receivers had recommended to the court that their bid be accepted.

The plaintiff stated that he was interested, representing a large creditor, in obtaining as much for the steel as possible, and would therefore be glad to represent the defendant in getting the steel for him.

He then investigated, and found that the steel had been sold to the Josephs, subject to confirmation, at $10.50 a ton. The plaintiff testified that the defendant then asked him if he—

"would take hold of it, and appear before the court, and get in a larger bid by him, and I told him I must be compensated for it if I did, and he asked me what I would require, and I told him I would want a retaining fee of $50, to be paid to me regardless of my argument before Judge Gould, and if I was successful in the matter I should expect a fee of $250. By 'successful' I *was referring at that time in the conversation to the hearing before Judge Gould.*"

The defendant said that would not only be satisfactory, but added that:

"If you can get the steel at the price I am willing to put on it, I will give you $100."

The next day the hearing was had before Judge Gould, and the plaintiff filed a written offer in behalf of the defendant that he would pay $11.25 a ton for it; but the judge confirmed the receiver's report of the earlier sale and refused to accept the defendant's bid.

It seems to me quite clear that the employment of the plaintiff up to that time was an ordinary employment of an attorney to represent the defendant in certain court proceedings, and when he was not successful in those proceedings the retainer terminated, and he was entitled at most to a compensation of $50. There is nothing in the testimony to show that either party contemplated negotiations to buy the steel from the original bidders, if the steel could not be obtained from the court, and no employment of the plaintiff by the defendant to institute or carry on such negotiations is shown. The plaintiff did, however, immediately after the court argument, institute such negotiations with the original bidders, and obtained from them an offer to resell the steel to the defendant for the same price and upon even more favorable terms than the defendant offered in court. It is for his services in obtaining this offer that the present suit is brought.

Obviously, since these services went beyond the scope of plaintiff's original employment, he cannot recover, unless he shows that the defendant thereafter accepted the plaintiff's services, or the benefit thereof, or in some manner ratified the plaintiff's voluntary exertions in his behalf. I do not find that the evidence is sufficient to sustain a recovery on any such theory. It appears that, after the plaintiff arranged for a resale, he telephoned to the defendant at New York that the original offer had been confirmed, but that he could get the steel for him at his price, if he would either send $10,000 that night or bring it in the next morning. The next morning the defendant came to Washington, but when he heard that he could obtain the steel only from the firm of Joseph & Joseph he absolutely refused to proceed with the matter, stating in effect that his previous dealings with that firm were not satisfactory. Up to this time the plaintiff had not told the defendant that he could obtain the steel only from that firm, though apparently he assumed that the defendant would infer this fact, because he told him in Washington that they were the original bidders, and told him over the telephone that this bid was confirmed.

Inasmuch, however, as the plaintiff's own testimony is that the defendant "flew up in the air" as soon as he heard that he was dealing with that firm, I think we must assume that the defendant made no such inference. It therefore appears that, as soon as the defendant learned that plaintiff was dealing with the original bidder, he repudiated the negotiations, and no liability to pay for any services can be predicated upon this testimony.

It follows that the judgment should be reversed, and a new trial ordered, with $30 costs to appellant to abide the event.

FINCH, J., concurs.

BIJUR, J. I dissent. The testimony of the plaintiff as to what occurred between defendant and himself at the subsequent interview in Washington, when defendant came there for the second time, is ample to sustain a finding that the defendant accepted the services of the plaintiff, regardless of whether he ultimately closed the transaction on the terms which plaintiff had procured for him.